# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br>   vs.<br><br>RICHARD G. BOYER, et al.,<br><br>                              Defendants. | CASE NO. 01cr2218 DMS<br><br>**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255**<br><br>**[Docket No. 684]** |

This case returns to the Court on Defendant Richard G. Boyer's ("Defendant") motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. The Government filed a response in opposition to the motion and Defendant filed a reply. For the reasons set out below, the motion is denied.

## I.
## BACKGROUND

Basic Research Corporation ("BRC") is a San Diego-based company. In 1992, the founders of BRC began promoting technologies to several investors. In furtherance of these promotions, the BRC executives established several other corporate entities, including Aegean Management Services ("Aegean") and Amlux, in order to raise money. Unbeknownst to investors, the heads of BRC and the other entities were diverting investor funds and utilizing their newly established corporations for several unlawful purposes, notably, to evade income taxes.

///

In 1994, Amlux acquired the rights to some of BRC's technologies. However, executives at BRC continued to raise money by falsely advertising that BRC owned the rights to the technologies. By 1997, many investors became concerned about BRC's ownership of the technologies. That same year, Defendant was hired by BRC executives to help fix a "rescission" problem within the company, and also began to raise funds for the technologies. In 1998, Defendant became the Chief Financial Officer of BRC.

While gathering information, Defendant became aware of the illegality of the previous fundraising efforts through a memo written by one of BRC's attorneys, Mr. Mansour. Defendant continued to raise money despite being aware of these and other legal issues.

The focus of the present motion is on Defendant's connection to two pieces of evidence–two BRC business ledgers allegedly prepared by Defendant in 1998. Defendant prepared the first ledger, which details accounting entries through December 31, 1998, and sent the ledger to the Government as part of a routine investigation. The second ledger, detailing accounting entries through August 5, 1998, was taken from a BRC office by Government agents themselves. The primary difference in the ledgers is that the ledger Defendant sent to the Government seems to indicate that taxable compensation was being adjusted to look like loans, which are not subject to tax liability. The ledger stored on BRC computers, however, showed the original taxable compensation entries.

On July 13, 2001, the Government filed an Indictment against Defendant alleging twenty-eight criminal counts: one count of conspiracy, thirteen counts of mail fraud, eleven counts of wire fraud, one count of money laundering conspiracy, one count of income tax conspiracy, and one count of criminal forfeiture, all of which were in association with his role as a BRC accountant and as the company's CFO.

The case proceeded to trial in this Court on March 15, 2005, and the jury received the case on April 21, 2005. As to Defendant, the following eight counts were submitted to the jury: one count of conspiracy to commit mail fraud and wire fraud; two counts of aiding and abetting mail fraud; three counts of aiding and abetting wire fraud; one count of conspiracy to commit money laundering; and one count of income tax conspiracy. The jury returned its verdict on April 28, 2005. Defendant was
///

acquitted of conspiracy to commit money laundering and convicted of income tax conspiracy. The jury was unable to reach verdicts on the remaining counts.

On April 14, 2006, this Court sentenced Defendant to a prison term of twelve months and one day, which he has served. The Court also ordered Defendant to be placed on supervised release for three years following his release from prison. Defendant remains on supervised release.

Defendant appealed his conviction to the Ninth Circuit, which affirmed his conviction in an unpublished opinion. Defendant now has filed this § 2255 motion seeking an order to vacate or set aside the judgment of conviction, alleging he received ineffective assistance of counsel in violation of his Sixth Amendment right. Defendant argues his counsel was deficient by failing to object during closing argument to the Government's argument that Defendant had control over the second ledger, and for failing to object to the admissibility of the second ledger, as it was not identical to the first ledger. Defendant's counsel initially objected to the admissibility of the ledgers before closing argument, but did not renew his objection during closing argument. Defendant argues he was prejudiced by his counsel's failure to object.

## II.

## DISCUSSION

An attorney's representation violates the Sixth Amendment right to counsel if a defendant can show that two factors are met. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, counsel's performance must be deficient and fall below an objective standard of reasonableness. *Id.* at 687-88. This deficiency must include errors so serious that "counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. However, a counsel's error, even if professionally unreasonable, does not warrant setting aside a judgment. *Id.* at 691. Second, there must be prejudice, *i.e.*, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 687, 694. The second prong of the *Strickland* test requires Defendant to "affirmatively prove prejudice." *Id.* at 693. Other circuit courts, such as the Fifth Circuit, have held that the second prong of the *Strickland* test may not be satisfied by mere speculation and conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). In other words, it is not enough to show that the errors impaired the presentation of the defense. To prove

1 prejudice, the alleged errors must also materially affect the outcome of the case and must lead to a
2 fundamentally unfair trial. *Id.* at 693-94.

3 In making the above determinations, this Court must evaluate the totality of the evidence. *Id.*
4 at 695. Further, "judicial scrutiny of counsel's performance must be highly deferential," and
5 Defendant must "overcome the presumption that, under the circumstances, the challenged action might
6 be considered sound trial strategy." *Id.* at 689. Where a defendant makes an insufficient showing on
7 one of the two factors enumerated above, the court may decline to address the second prong. *Id.* at
8 697.

9 **A.  Defense Counsel's Failure to Object to the Government's Argument That Defendant Had Control Over the Second Ledger**
10

11 Defendant argues that his trial counsel was ineffective by failing to object, during closing
12 argument, to the Government's argument that Defendant was responsible for the business ledger that
13 the Government obtained directly from a BRC computer. The ledger was taken from BRC property,
14 but not from Defendant's office. Before closing argument, Defendant's counsel objected to the
15 admission of this evidence on grounds of relevance and reliability, but the Court overruled the
16 objections. Defendant claims that before closing argument the Government conceded the business
17 ledger taken from the BRC computer was never under Defendant's control. Defendant argues that
18 during closing argument, the Government relied on the business ledger and misrepresented that
19 Defendant had control of the incriminating ledger; thus, according to Defendant, his counsel should
20 have objected during the Government's closing argument.

21 Defendant, however, misapprehends the relevant events. Before closing argument, as the
22 transcript indicates, the Government simply contended that the ledgers taken were not located in
23 Defendant's office; it never asserted Defendant did not exhibit some control over the ledgers. (*See*
24 Mot., Ex. C. at 1-2, 6.) During closing argument, the Government argued the reasonable inference
25 that Defendant was responsible for, or knowingly caused, the marked differences between the ledger
26 he
27 ///
28 ///

1  ///

2  sent to the Government and the ledger taken from BRC's computer.[1]  (*See* Mot., Ex. D. at 6-8.)

3  "Reasonable inferences," of course, may be drawn from the underlying evidence and argued to the

4  jury. *United States v. Henderson*, 241 F.3d 638, 652 (9th Cir. 2000).  Because defense counsel's

5  objection to admissibility of the ledger was overruled before closing argument, and the Government

6  did not change its characterization of the ledger, defense counsel acted reasonably by not objecting

7  a second time during closing argument.  Counsel's conduct here does not fall below an objective

8  standard of reasonableness.

9  **B.     Defense Counsel's Failure to Object to the "Incomplete" Nature of the Second Ledger**

10         Defendant argues that because the ledger he sent to the Government ran through December

11  31, 1998, and the "incomplete" ledger taken from BRC's computer only ran through August 5, 1998,

12  the Government's comparisons are misleading and his counsel should have objected.  Defendant's

13  argument is unfounded for two reasons.  First, because the same data entered as taxable compensation

14  on one ledger was entered as loans on the other, the dates indicated on the ledgers were incidental to

15  the information contained within them.  In addition, given the Court's ruling on defense counsel's first

16  objection, a further objection on grounds of incompleteness would not have been sustained.

17         From a tactical perspective, defense counsel acted reasonably in refraining from objecting

18  during closing argument.  In fact, even if a reasonable person would believe the Government's

19  characterizations were unreasonable, "[objecting] during closing argument to a slight mis-

20  characterization of evidence is a strategic decision that deserves deference." *United States v. Daas*,

21  198 F.3d 1167, 1179 (9th Cir. 1999).  In other words, Defendant's counsel may have reasonably

22  concluded that objecting a second time would bring harmful attention to the point at issue.  Therefore,

23  counsel's failure to object to the "incompleteness" of the ledger did not fall below an objective

24  ///

25  ///

26  ///

---

[1] These inferences were based on evidence that the BRC office where the ledger was recovered was relatively small, Defendant was CFO of the company, and he was aware of the company's illegal practices but continued to raise funds which were used improperly.

1  ///

2  standard of reasonableness.[2] Absent a showing that counsel's conduct fell below an objective standard

3  of reasonableness, the Court declines to address the prejudice prong of the *Strickland* test.

### III.

### CONCLUSION

For these reasons, the Court denies Defendant's motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.

**IT IS SO ORDERED**.

DATED: June 16, 2010

HON. DANA M. SABRAW
United States District Judge

---

[2] In a footnote in his opening brief, Defendant argues his counsel should have moved to discover an electronic version of the "incomplete" ledger to see who inputted the accounting information into the ledger and at what time, and that his failure to do so was unreasonable. Defendant argues that if counsel had made this motion, he would have discovered that someone else created the ledger, and could have identified that fact for the jury. However, there is no evidence that this information would have been discovered by reference to the electronic information. Thus, Defendant has not shown that his counsel's conduct fell below an objective standard of reasonableness.